COURT OF APPEALS OF VIRGINIA

Present:  Judges Friedman, White and Senior Judge Humphreys[*]
Argued at Christiansburg, Virginia

**UNPUBLISHED**

KEISHA BAILEY

v.      Record No. 0054-23-3

CORETTA THURMAN

MEMORANDUM OPINION[**] BY
JUDGE FRANK K. FRIEDMAN
APRIL 9, 2024

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael R. Doucette, Judge

Peter S. Askin (Juliette N. Michael; Paul T. Robertson;
ThompsonMcMullan, P.C.; Virginia Legal Aid Society, Inc., on
brief), for appellant.

No brief or argument for appellee.

Following a bench trial, the trial court dismissed Keisha Bailey's petition for relief from

unlawful exclusion pursuant to Code § 55.1-1243.1. On appeal, Bailey argues that she satisfied

the statutory requirements to recover damages under the statute. Finding no reversible error, we

affirm.

BACKGROUND[1]

The present case involves an unfortunate saga between a landlord and a tenant. Coretta

Thurman was a partial owner of property located at 811 Polk Street in Lynchburg ("the

---

[*] Senior Judge Humphreys participated in the hearing and decision of this case prior to
the effective date of his retirement on December 31, 2023. On April 1, 2024, he was designated
as a senior judge.

[**] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1]     Appellate courts defer to the findings of fact made by a jury or a
        trial judge at a bench trial if there is evidence to support them and
        will not set a judgment aside unless it appears from the evidence

Property"). Thurman and her six siblings inherited the Property from their father upon his passing, and Thurman managed the Property.

In September 2020, Bailey and Thurman executed a written month-to-month lease agreement. The lease contained a notice provision, requiring that Thurman provide 30-day notice to terminate the agreement. Bailey was responsible for paying certain utilities, including water and electricity.

Initially, Thurman and Bailey did not have issues; however, problems arose in February 2022 when Bailey stopped paying utilities. By March 2022, water and electricity were shut off due to Bailey's nonpayment. On March 8, 2022, Thurman notified Bailey via text message that the water bill had not been paid.[2] Bailey did not pay rent in March 2022.[3] Thurman provided a 30-day written notice to vacate to Bailey in March 2022 as required by the lease agreement.[4] Bailey does not dispute that she received a 30-day written notice in March pursuant to the lease agreement. Bailey offered no evidence that the notice was ineffective or defective.

In response to this notice, Bailey moved across town. According to Thurman, while living across town, Bailey left belongings strewn throughout the unit. Bailey also left her dog at the Property. Thurman started to receive calls from Lynchburg Animal Control because Bailey's dog had been tied up without any food. Thurman told Bailey she needed to retrieve her dog and

---

that the judgment is plainly wrong. That deference applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved.

*Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010) (citing Code § 8.01-680).

[2] Thurman submitted the bill, in Bailey's name, into evidence at trial; Thurman also submitted a screenshot of the text message notifying Bailey that the bill had not been paid.

[3] The record is unclear whether Bailey paid rent in February 2022.

[4] The basis given was that Thurman had a buyer for the Property and intended to sell it.

"if she didn't . . . the Game Warden was going to get it." Eventually, Bailey "came over [to the Property] and took her dog with her." Thurman's unrebutted testimony confirms Bailey was not living at the Property for, at least, "weeks and weeks."

In May 2022, Bailey returned intermittently to the Property while also living across town. Bailey continued not to pay rent or utilities, and the Property still had no water or electricity in April or May of 2022. Therefore, when Bailey stopped by the Property, she strung an extension cord from a neighbor's residence to provide electricity. Thurman advised Bailey not to do that: "I advised her to stop because it was a fire hazard, [but] she continued to do it." Also, at some point, according to Thurman, Bailey's cousin began to deal "meth" from the Property.

On May 11, 2022, Thurman asked Bailey to sign a "Tenant and Renters Rights" form. The record confirms that Bailey was not living at the Property on this date: "because she wasn't living there [at the Property], she had to come across town to sign the form." Thurman changed the locks on this date. Thurman told Bailey that she could remove any belongings through the end of the month and that she would help her do so. By this point, Bailey, who had been given a 30-day written notice in March 2022 to vacate, had not paid rent for March, April, and May of 2022.

On May 26, 2022, Bailey filed a petition for relief from unlawful exclusion against Thurman in the Lynchburg General District Court. Bailey alleged that Thurman, upon changing the locks in May, "removed or excluded [Bailey] from the dwelling unit unlawfully." At a hearing on June 1, 2022, the general district court granted judgment for Bailey, awarding her statutory damages of $5,000 and attorney fees of $380. Thurman filed a notice of appeal.[5]

---

[5] Even after receiving a new key to the unit after the general district court hearing, Bailey never retrieved her cast-off belongings from the Property. A fair inference is that the items had been abandoned.

The Lynchburg Circuit Court held a bench trial on Thurman's appeal from the general district court judgment against her. Bailey, who did not testify, called Thurman as part of her case-in-chief.[6] Thurman, as part of her own case, provided unrebutted testimony of Bailey's abuses of the Property, her failure to pay rent, and that Bailey had received proper notice to vacate in March and had subsequently moved out. Thurman also provided photos of Bailey's use of the extension cord to gain electricity.

Upon hearing the evidence, the trial court found "that the defendant did not exclude the plaintiff from the dwelling unit unlawfully." The trial court also found "[t]he plaintiff in this case is before this Court with unclean hands."[7] The trial court concluded that Bailey did not use the Property as a residence, which is a requirement for a tenant under the Act. Code § 55.1-1232. The trial court further determined that Bailey's conduct had rendered the Property "uninhabitable" and that Thurman acted to "protect her property" from Bailey's abuses. For these reasons, the trial court "grant[ed] judgment to the defendant and dismiss[ed] the plaintiff's petition."

Bailey appeals and asserts three assignments of error. First, Bailey argues "[t]he circuit court erred in dismissing the petition and granting judgment to defendant on plaintiff's claim under Code § 55.1-1243.1." Bailey's second and third assignments of error contend the trial court improperly invoked the clean hands doctrine here.[8] Because our resolution of the first

---

[6] Thurman did acknowledge, during questioning from Bailey's lawyer, that she changed the locks in May. Bailey also introduced a request for admission in which Thurman, *pro se*, admitted Bailey was a "tenant" in May. The request for admission upon which Bailey relies stated simply: "Bailey was a tenant at the property in May 2022."

[7] The trial court found, because Code § 55.1-1243.1 "distinguishes between actual damages and statutory damages," the latter is "a form of equitable relief sought by the plaintiff."

[8] Although we do not reach the issue of whether the clean hands doctrine applies to Code § 55.1-1243.1, we do note that generally the defense of clean hands only applies to equitable claims. *See Cline v. Berg*, 273 Va. 142, 147 (2007) (quoting *Richards v. Musselman*, 221 Va.

- 4 -

assignment of error resolves this case, we do not address Bailey's remaining assignments of error.[9]

ANALYSIS

Bailey's petition for relief from unlawful exclusion is brought pursuant to Code § 55.1-1243.1(A)(i). The relevant statutory language provides as follows: "A general district court shall enter an order . . . upon petition by a tenant who presents evidence establishing that his landlord has willfully and without authority from the court (i) removed or excluded the tenant from the dwelling unit unlawfully[.]" Code § 55.1-1243.1(A). If a plaintiff satisfies the requirements of Code § 55.1-1243.1(A) by a preponderance of the evidence, then "the tenant shall recover (i) the actual damages sustained by him; (ii) statutory damages of $5,000 or four months' rent, whichever is greater; and (iii) reasonable attorney fees." Code § 55.1-1243.1(D).

_____

181, 185 (1980)); *see also LaRock v. City of Norfolk*, 301 Va. 100, 106 (2022) (finding "[b]y applying the clean hands doctrine [to a petition to implement a grievance panel decision], the circuit court invoked its equitable powers where it was not entitled to do so"). However, "the United States Supreme Court has avoided the question of whether a court has authority to invoke an equitable defense like unclean hands to bar an action for damages. As a result, the controversy continues in the intermediate appellate and trial courts of state and federal jurisdictions." T. Leigh Anenson, *Limiting Legal Remedies: An Analysis of Unclean Hands*, 99 Ky. L.J. 63, 65 (2018). State appellate courts greatly vary in the applicability of equitable defenses to statutory damages. *See, e.g.*, *Maldonado v. Ford Motor Co.*, 719 N.W.2d 809, 818 (Mich. 2006) (affirming dismissal of damages claim because of litigant's unclean hands, finding "despite its origins, [the clean hands doctrine] is applicable to both equitable and legal damage claims"); *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952 (Wyo. 1999) (determining the unclean hands doctrine does not apply to legal remedies). We leave for another day whether clean hands may be applied in the context of Code § 55.1-1243.1.

[9] The doctrine of judicial restraint dictates that a reviewing court decide cases on the best and narrowest grounds available. *See Commonwealth v. Swann*, 290 Va. 194, 196 (2015); *see also Conley v. Commonwealth*, 284 Va. 691, 694 n.3 (2012) (stating "[b]ecause [the] first assignment of error is dispositive, we do not reach the second").

A Plaintiff Must Be "Unlawfully" Excluded or Removed from the Property – and Must Have Rights Under the Lease – for Relief to Be Available Under Code § 55.1-1243.1.

Based on the statute's language, Bailey was required to establish by a preponderance of evidence that Thurman "willfully and without authority from the court (i) removed or excluded the tenant from the dwelling unit unlawfully . . . ." Code § 55.1-1243.1(A). We are bound by the plain meaning of the statute. *See Williams v. Commonwealth*, 61 Va. App. 1, 7 (2012).

A. The Meaning of "Unlawfully"

Under the statute, Bailey argues that she must prove that she is a tenant within the meaning of the Act and that the landlord acted willfully and without authority of the court to exclude or remove her from the premises unlawfully. Bailey argues that if the exclusion here occurred without court approval, it must also be unlawful.

We agree with the trial court that, given the statute's language, "[t]he plaintiff had to show the exclusion was unlawful, regardless of whether it was done without authority of the court."[10] "We presume that the legislature chooses statutory language with care and '[w]hen the General Assembly uses two different terms, it is presumed the terms are to mean two different things.'" *Spratley v. Commonwealth*, 69 Va. App. 314, 319-20 (2018) (alteration in original) (quoting *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)), *aff'd*, 298 Va. 187 (2019). Here, based on the foregoing caselaw, we disagree with Bailey's position that "unlawfully" is synonymous with "without authority from the court." In this case, the trial court found that "[Thurman] did not exclude [Bailey] from the dwelling unit unlawfully."

It is undisputed that Thurman changed the locks without first obtaining authority from the court. However, the question is whether this action was unlawful under these very unique facts.

---

[10] Code § 55.1-1243, in effect until June 30, 2021, was repealed and replaced by Code § 55.1-1243.1 and did not include the language "without authority from the court." *See* Code § 55.1-1243 (repealed 2021).

Here, the record reveals that Thurman provided 30-day written notice to Bailey to vacate in March pursuant to the terms of the lease agreement. Bailey does not dispute that she received such notice. Nor does she posit any reason the notice was ineffective. The lease agreement provided that the rental term was month-to-month. According to testimony, upon receiving notice to vacate, Bailey, in fact, left the Property and moved across town. Bailey left her dog at the Property unattended for a time, resulting in Animal Control contacting Thurman. Bailey ultimately retrieved the dog but continued to reside across town. Bailey did not pay rent during any of the period in question. The evidence, in best light to Thurman, is that Bailey "moved out" and left the property for "weeks and weeks."[11]

When Bailey re-entered the Property in May, it was still without utilities. Bailey strung an extension cord from a neighbor's residence to obtain electricity during this time, since utilities were still shut off due to Bailey's nonpayment. Bailey disregarded warnings that the extension cord created a fire hazard. The trial court found that Bailey's actions rendered the premises "uninhabitable" and concluded:

> From February 2022 on, the plaintiff in this case did everything but use 811 Polk Street as a residence. Aside from the allegations that her cousin was using the home as a narcotics market, the uncontroverted evidence is that the home was uninhabitable due to the plaintiff's actions. She left the home without water or electrical service. When she briefly returned in May 2022, she ran an extension cord from a neighbor's house into the home, in spite of the fact such a cord created a[n] imminent fire risk. Basically, the plaintiff reduced the residence to a storage facility for which she paid no rent.

---

[11] Bailey notes that for many tenant breaches or actions, the Act provides remedies or notice provisions to enable the tenant to cure the defect. *See e.g.*, Code § 55.1-1245. Upon clear abandonment, however, the rental agreement terminates. "The rental agreement is deemed to be terminated by the landlord as of the date of abandonment by the tenant." Code § 55.1-1249; *see* Code § 55.1-1229(C) (stating, in relevant part, landlord has right to access property without court order if the tenant has abandoned the premises).

We agree with the trial court that, on these facts, Bailey failed to establish that she was excluded unlawfully. Evidence that Bailey moved out for "weeks and weeks," *see* Code §§ 55.1-1249, -1229(C), and failed to use the Property as a residence supported the finding, *see* Code § 55.1-1227. Evidence that she failed to maintain utilities or pay rent, created a hazard with the extension cord, and permitted drug dealing on the premises further underscores Bailey's problematic conduct. The court concluded: "I find that the defendant did not exclude the plaintiff from the dwelling unit unlawfully."

We note that whether a tenant has been excluded unlawfully will likely be determined on a case-by-case basis.[12] Given the trial court's factual findings here, we cannot say that the court was plainly wrong or without evidentiary support in finding that Bailey failed to prove that Thurman removed or excluded her unlawfully; as a result, we do not find that the trial court erred in dismissing Bailey's petition.[13]

---

[12] The penalties of Code § 55.1-1243.1 can be harsh and a landlord who resorts to self-help risks significant damages if the fact-finder determines her actions were unlawful. Here, however, the trial court, on competent evidence, found the landlord's actions were not unlawful.

[13] Bailey cites generally to Code § 55.1-1252 to support claims that Thurman acted unlawfully. This statute provides in relevant part, that "[a] landlord may not recover or take possession of the dwelling unit . . . (ii) by refusal to permit the tenant access to the unit unless such refusal is pursuant to a court order for possession." Bailey does not argue that this statute goes to a specific element of her claim; rather, she argues generally that she stated a prima facie case pursuant to Code § 55.1-1243.1 because Thurman violated Code § 55.1-1252. We agree with Bailey that Thurman did not have a court order when she changed the locks; however, we disagree with Bailey that Thurman's actions automatically establish both elements of Bailey's claim: that the exclusion was "without authority from the court" and "unlawful[]." If a fact-finder reasonably concluded that Bailey failed to establish that she enjoyed rights to remain on the premises under the terms of a rental agreement in May 2022 or that she abandoned the Property—the exclusion would not be unlawful. *See* Code § 55.1-1200 (defining "tenant" as a person entitled to occupy under the terms of a rental agreement); Code § 55.1-1232 (providing "tenant" shall occupy dwelling unit as a residence only); *see also* Code § 55.1-1249 (upon abandonment, rental agreement is deemed terminated).

### B. Plaintiff Must Have Tenant Rights Under a Rental Agreement to Claim Protection Under the Act

Bailey must establish that she is a "tenant" to be entitled to relief. *See* Code § 55.1-1243.1. Bailey agrees in her brief that that she must meet this element. *See* Op. Br. at 7. "Tenant" is defined in the Virginia Residential Landlord and Tenant Act, in relevant part, as "a person entitled only under the terms of a rental agreement to occupy a dwelling unit to the exclusion of others and includes a roomer."[14] Code § 55.1-1200. "Dwelling unit" is defined in the same statute, in relevant part, as "a structure or part of a structure that is used as a home or residence . . . ." *Id.* On brief, Bailey suggests she was a "tenant" in May 2022 based on the month-to-month lease agreement signed by the parties. Further, she contends that Thurman admitted that Bailey was a "tenant" and argues that we, therefore, do not need to examine the underlying evidence to determine if this element is met. We find that, on this record, a fact-finder could conclude that Bailey failed to establish by a preponderance of the evidence that she was a "tenant" as defined in Code § 55.1-1200 in May 2022, or that she had rights under a rental agreement at that time.

Again, a "tenant" is a person "entitled only under the terms of a rental agreement" to occupy the Property. *Id.* Here, Bailey failed to prove that in May 2022 she was "entitled" pursuant to the lease agreement to occupy the Property. Bailey did not put the lease in evidence. Moreover, the facts indicate that Thurman provided proper notice to vacate the Property pursuant to the month-to-month lease agreement. Bailey does not dispute that she received a 30-day written notice in March 2022. We disagree with Bailey that, per the parties' lease agreement, she was entitled to return to the Property in May 2022, without paying rent and while creating dangerous conditions.

---

[14] "Tenant" has various definitions in the Virginia Code. *See* Code §§ 55.1-1200, -1300; *see also* Code § 8.01-226.12.

Instead, Bailey suggests that Thurman's response to a request for admission is sufficient to confirm her rights. Bailey contends that Thurman is bound by her answers to a pretrial request for admission, where Thurman stated simply that Bailey was a "tenant" in May 2022. The request for admission was admitted into evidence at trial. While we agree with Bailey that Thurman—even as a *pro se* litigant—is bound by admissions of fact, such as that Thurman changed the locks in May 2022; we disagree that Thurman is bound by admissions of law. *See Cofield v. Nuckles*, 239 Va. 186, 194 (1990) (providing a party can concede the facts but cannot concede the law); *see also Epps v. Commonwealth*, 47 Va. App. 687, 703 (2006) (en banc) (citing *Tuggle v. Commonwealth*, 230 Va. 99, 111 n.5 (1985)), *aff'd*, 273 Va. 410 (2007). Here, "tenant" is a legal term of art as defined in Code § 55.1-1200 with specific requirements.[15] We disagree with Bailey's assertion that Thurman is bound by admissions of law in the same way she is bound by admissions of fact. *See Nuckles*, 239 Va. at 194 (defendant's "belief that he was 'not supposed to be' driving in the curb lane at the time of the accident does not make such action illegal").

Notably, Bailey did not object to portions of Thurman's testimony in which she testified about facts that indicated Bailey was not a "tenant." *See TransiLift Equip., Ltd. v. Cunningham*, 234 Va. 84, 91 (1987). Here, the fact-finder was free to consider Thurman's factual admissions—and to weigh them against evidence that Bailey was not using the premises as a residence, had not paid rent in months, had moved out, and was fostering dangerous conditions on the premises when she returned. The fact-finder clearly did accept much of Thurman's testimony as true.

---

[15] For example, to constitute a "tenant," a person must "occupy a dwelling unit . . . ." Code § 55.1-1200. "Dwelling unit" is defined as "a structure or part of a structure that is used as a home or residence . . . ." *Id.* A tenant shall occupy his dwelling only as a residence. Code § 55.1-1232.

Ultimately, Bailey, as the plaintiff seeking to avail herself of the remedies of Code § 55.1-1243.1, had the burden to establish that she met the requirements of the statute. The trial court found Bailey did not satisfy the requirements of Code § 55.1-1243.1, and its conclusion was supported by significant evidence that goes to the heart of whether Bailey was a "tenant" and whether she was "unlawfully" excluded.

In May 2022, the evidence shows Bailey, to the extent she was even still at the Property, was not using it as a "residence or home." *See* Code § 55.1-1200 (a tenant occupies a dwelling unit which is a structure used as a residence). The trial court found that Bailey "did everything but use 811 Polk Street as a residence." *See* Code § 55.1-1232 (stating tenant shall occupy his dwelling unit only as a residence). Moreover, in this case, Bailey was not "entitled . . . under the terms of a rental agreement" to occupy the Property in May 2022 where Bailey was provided 30-day written notice in March 2022 pursuant to a month-to-month lease agreement. Bailey does not challenge the validity of the notice to terminate the lease, nor did she present facts at trial that showed she was "entitled" pursuant to a lease agreement to remain at the Property in May. Again, Bailey, as the plaintiff, had the burden to prove her claim. Furthermore, in best light to Thurman, as the prevailing party below, inferences support that Bailey abandoned the Property when, upon getting notice, she moved across town and was residing elsewhere for "weeks and weeks." *See* Code § 55.1-1249. Under these facts, the trial court did not err in dismissing Bailey's petition.

CONCLUSION

Bailey had the burden of proving that she was a tenant with rights under a lease agreement and that without authority of the court, she was unlawfully excluded from the

premises.  The trial court found that she did not meet this burden—and the record supports this

conclusion.  The trial court did not err in dismissing Bailey's petition.  Therefore, we affirm.

*Affirmed*.